**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**BRYNN BURNS,**

Plaintiff,

v.

**NATIONAL ASSOCIATION OF REALTORS d/b/a REALTOR.COM**
Serve at: Reg. Agt. Katherine R. Johnson
430 North Michigan Avenue
Chicago, IL 60611

and

**MOVE, INC.,**
Serve at: The Corporation Trust Company
1209 Orange Street
Wilmington, Delaware 19801

Defendants.

Case No. 1:26-cv-10316

**JURY TRIAL DEMANDED**

# COMPLAINT FOR COPYRIGHT INFRINGEMENT

(INJUNCTIVE RELIEF DEMANDED)

COMES NOW Plaintiff Brynn Burns, by and through her undersigned counsel, and hereby states for her Complaint against Defendants National Association of Realtors d/b/a Realtor.com ("Defendant NAR") and Move, Inc. ("Defendant Move," together with Defendant NAR, "Defendants") as follows:

## SUMMARY OF THE ACTION AND PARTIES

1. This is a claim for copyright infringement and for removal or alteration of copyright management information.

2. Plaintiff is a professional photographer with sole rights to a series of photographs that depict the estate owned by football star Travis Kelce; Plaintiff's collection consists of impossible-to-find photos of the estate's interior rooms and the garden area where Mr. Kelce

proposed to pop icon Taylor Swift. Defendants knew these photographs belonged to Plaintiff. Defendants used and published these photographs without Plaintiff's permission to drive millions of people to Defendants' profitable website, realtor.com, thinking it would be better (and cheaper) to "beg forgiveness" rather than to have sought Plaintiff's permission.

3. Defendants used Plaintiff's copyrighted photos to specifically target customers in this District. Defendants published the copyrighted photos in this District.

4. Plaintiff brings this action for Defendants' violations of exclusive rights under the Copyright Act, 17 U.S.C. § 106, to copy and distribute Plaintiff's original copyrighted works of authorship.

5. Plaintiff is a full-time, self-employed professional photographer; the photographic portfolio at issue in this litigation depicts a residential property. Plaintiff's portfolio was years in the making.

6. Plaintiff's Work (as defined herein) at issue is part of her portfolio that depicts a residential property (the "Kelce Estate"). The Work depicted a residential home owned by Kansas City Chiefs tight end Travis Kelce, and was the site of Kelce's proposal to singer-songwriter Taylor Swift; the Work was of interest to people around the world.

7. To create the Work, Plaintiff used professional-grade photography and editing equipment.

8. To create the Work, Plaintiff invested many hours of her professional time.

9. Plaintiff is well-paid for the Work; in light of the special circumstances surrounding the Work described herein, the minimum fee for the time and a use-limited license of the Work that Defendants used without permission in this case is many thousands of dollars for a licensee who wishes to use the Work nationally.

10. At all times relevant, Defendants jointly owned, operated, and controlled www.realtor.com in addition to the corresponding Instagram gallery located @realtordotcom. Defendants directed and/or approved of the use of the subject copyright-protected images on Defendants' website, "www.realtor.com" in addition to Defendants' Instagram page. Defendants include the following message on the bottom of every page on their website "www.realtor.com" identifying themselves as the parties who own and control the website and its content:

> © 1995-2026 National Association of REALTORS ® and Move, Inc. All rights reserved.

11. Defendants used Plaintiff's Work to promote Defendants' real estate business in this District and nationwide.

12. Defendants appropriated, without license or permission, Plaintiff's copyrighted Work to advertise, market and promote Defendants' business activities within this District.

13. Specifically, Defendants used the Work to promote traffic to their business website in this District. Plaintiff is unable to sell or license the Work in this District because Defendants have made the Work available to the world for free via their piracy of the Work.

14. Defendants committed the violations alleged in connection with Defendants' business for purposes of advertising and promoting their business to the public in the course and scope of Defendants' business.

**JURISDICTION AND VENUE**

15. This is an action arising under the Copyright Act, 17 U.S.C. § 501.

16. This is also an action for removal or alteration of copyright management information under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202.

17. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a).

18. As described herein, this Court has personal jurisdiction over Defendants.

19. Defendant NAR is a not-for-profit corporation with its principal place of business in Chicago, Illinois, within this District. Defendant NAR is headquartered and based in Chicago, Illinois in this District and maintains offices, executives, and employees in Chicago, Illinois in this District. Defendant NAR is incorporated in Illinois.

20. Defendants purposefully availed themselves of the privilege of conducting business in Illinois and have sufficient contacts with Illinois to satisfy due process. Defendants conduct systematic and continuous business throughout Illinois and within this District. A substantial part of the events or omissions giving rise to the claim occurred in this District. Defendants marketed and promoted their business and services using Plaintiff's copyrighted images in this District. Defendants engaged in infringement in this District. Defendants advertised, marketed, and promoted their business and tried to bring in new customers using Plaintiff's copyrights in this District. Defendants systematically and routinely avail themselves of consumers in Illinois and in this District through the marketing and sale of their services in this jurisdiction.

21. Defendants published the Work for viewing in this District. Defendants used Plaintiff's Work as a form of "content marketing" to draw residents of this District to their website and convert them into extremely profitable customers. On the page in which Defendants used the Work, Defendants encouraged visitors to "buy," "sell," "rent," "advertise," make an account, and sign up for Defendants' email list.

22. Defendants derive significant amounts of revenue from the sale of advertising space on realtor.com to Illinois-based businesses.

23. On Defendants' website realtor.com, Defendants currently have tens of thousands of homes listed for sale in this District. Defendants solicit website visitors to virtually tour these homes, to schedule in person tours of these homes, to contact the realtors responsible for selling these homes, to get pre-approved for financing to purchase these homes, to make realtor.com accounts, and to otherwise interact with Defendants' website and business in a profitable manner. Defendants target customers in this District and even offer analyses of the Cook County/Chicago housing market on their website and have a dedicated page to this topic: https://www.realtor.com/local/market/illinois/cook-county/chicago

24. Upon information and belief, Defendant NAR directed and approved all relevant decisions Defendants took regarding Defendants' use of the Work on Defendants' site realtor.com from Defendant NAR's headquarters in Chicago, Illinois. Upon information and belief, Defendant NAR directed and approved all relevant decisions Defendants took regarding Defendants' use of the Work on Defendants' realtor.com instagram page from Defendant NAR's headquarters in Chicago, Illinois. Upon information and belief, Defendant Move acted through Defendant NAR and acted subject to approval and moderation by Defendant NAR from Defendant NAR's headquarters in Chicago, Illinois. As shown in the website footer, Defendants asserted their claims of copyright over Plaintiff's Work in this District pursuant to an agreement made at Defendant NAR's headquarters in this District.

25. For the reasons stated above and throughout this Complaint, venue is proper in this District under 28 U.S.C. § 1391(b) and (c) and 1400(a).

## THE COPYRIGHTED WORK AT ISSUE

26. In 2023, Plaintiff visited the Kelce Estate and created a portfolio of professional photographs of the estate.

27. Specifically, as part of this portfolio, Plaintiff created photographs entitled "11541 Cherokee Ct-2880," "11541 Cherokee Ct-2918," "11541 Cherokee Ct-2960," "11541 Cherokee Ct-3075," "11541 Cherokee Ct-3294," "11541 Cherokee Ct-3318," and "11541 Cherokee Ct-3369," which are shown below and referred to collectively throughout as the "Work."



11541 Cherokee Ct-2880



11541 Cherokee Ct-2918



11541 Cherokee Ct-2960



11541 Cherokee Ct-3075



11541 Cherokee Ct-3294



11541 Cherokee Ct-3318



11541 Cherokee Ct-3369

28. Plaintiff thereafter registered her work with the United States Copyright Office on January 30, 2024 via USCO certificate VA 2-394-359. The Certificate of Registration for the Work is attached hereto as **Exhibit 1** and incorporated herein by reference.

29. The Work consists of renderings of the interior and exterior of the Kelce Estate. To create the Work, Plaintiff took a series of photographs of the property and digitally edited and retouched lighting in the photos to create the final copyrighted images.

30. At all relevant times, Plaintiff was the sole owner of the copyrighted Work at issue in this case.

**INFRINGEMENT BY DEFENDANTS**

31. On December 20, 2023, Defendants paid Plaintiff to license her Work through December 31, 2024. A copy of the Release and License Agreement ("the Agreement") is attached as **Exhibit 4**.

32. Thus, Defendants knew at all times relevant that Plaintiff owned the Work.

33. On a date after the Work at issue in this action was created, registered with the United States Copyright Office, and the Agreement expired, but prior to the filing of this action, Defendants copied the Work.

34. Defendants copied Plaintiff's copyrighted Work without Plaintiff's permission, and long after their license expired.

35. After Defendants copied the Work, they made further copies and distributed the Work on the internet to promote the sale of goods and services as part of Defendants' business.

36. Specifically, Defendants placed the Work on "www.realtor.com" (the "Website") and Defendants' corresponding Instagram page, both of which Defendants jointly owned, controlled, and operated to promote Defendants' real estate business.

37. Defendants used the Work to promote their business interests, and specifically to attract millions of potential customers to realtor.com.

38. Defendants' display of the Work was repeated and continuous.

39. Defendants displayed the Work on their website and stored it on that website for future use. *See* **Exhibit 2** and **Exhibit 3** from Defendants' Website.

40. Defendants began displaying the Work on August 12, 2025 after Plaintiff registered the Work, and well after the Agreement had expired.

41. In August 2025, Plaintiff discovered that Defendants were using the Work on their website. Plaintiff was stunned and disappointed to find her photographs on Defendants' website well after Defendants' license to use the Work had expired.

42. Defendants' display of the Work is captured on their website in the following screenshots:



Travis purchased his Leawood, KS, mansion in 2024. BRYNN BURNS PHOTOGRAPHY



It comes as no surprise that Kelce chose to ask Swift to marry him at his home as it boasts an overwhelming amount of privacy and lush greenery—two things the pop star is known for adoring. BRYNN BURNS PHOTOGRAPHY



It was reported later that year that he was building an underground man cave at the property. BRYNN BURNS PHOTOGRAPHY




The Kansas City Chiefs tight end snapped up the 17,000-square-foot mansion in the desirable suburb of Leawood, KS, in September 2022 for $6 million. BRYNN BURNS PHOTOGRAPHY




It's not known when exactly Taylor and Travis filmed their "New Heights" episode, however, the former returned to Kansas at the end of July to begin pre-season training. BRYNN BURNS PHOTOGRAPHY



The six-bedroom, six-bathroom mansion sits behind a gated entrance that opens to a dramatic circular driveway. BRYNN BURNS PHOTOGRAPHY




Located inside a gated community, the grand estate sits on nearly 3.5 acres at the end of a quiet cul-de-sac. BRYNN BURNS PHOTOGRAPHY



Outside, the expansive backyard is anchored by a "Beverly Hills-style" pool area with plenty of space for lounge chairs, umbrellas, and pool toys. BRYNN BURNS PHOTOGRAPHY



The inside is an entertainer's dream and includes a chef's kitchen, formal dining room, media lounge, wine cellar, and full bar. BRYNN BURNS PHOTOGRAPHY



There's also an outdoor kitchen, tennis/pickleball court, waterfall, hot tub, and miniature golf course. BRYNN BURNS PHOTOGRAPHY

43. Plaintiff carefully reviewed the screenshots and determined that this was her Work and that Defendants did not have any license or permission to use the Work, as Defendants' Agreement had expired.

44. Defendants copied and distributed Plaintiff's copyrighted Work in connection with Defendants' business for purposes of advertising and promoting Defendants' business, and in the course and scope of advertising and selling Defendants' goods and services.

45. Defendants infringed on the copyright of the Work as evidenced by the screenshot exhibits attached hereto.

46. As shown on their website footer, Defendants identify themselves as the copyright owners of the website, the website content, and every page on the website, including those on which Defendants knowingly and improperly used Plaintiff's copyrighted photos.

© 1995-2026 National Association of REALTORS ® and Move, Inc. All rights reserved.

**DEFENDANTS' BUSINESS OPERATIONS IN THIS DISTRICT**

47. Defendants conduct systematic and continuous business throughout Illinois and throughout this District. Upon information and belief, Defendant NAR has approximately 50,000 members in Illinois and receives ~$9.6 million per year in dues from members in Illinois. Defendant NAR is headquartered in this District where it made all relevant decisions.

48. On Defendants' website realtor.com, Defendants currently have tens of thousands of homes listed for sale in this District. Defendants solicit website visitors to virtually tour these homes, to schedule in person tours of these homes, to contact the realtors responsible for selling these homes, to get pre-approved for financing to purchase these homes, to make realtor.com accounts, and to otherwise interact with Defendants' website and business in a profitable manner. Defendants target customers in this District and even offer analyses of the Cook County/Chicago housing market on their website and have a dedicated page to this topic: https://www.realtor.com/local/market/illinois/cook-county/chicago

49. Defendants specifically used Plaintiff's copyrighted photos to target consumers in this District. Defendants have a section of their website dedicated to "content marketing." Content marketing is a method of promotion in which companies create and share interesting material online to attract and retain a clearly defined audience, build trust with that audience, and guide them toward profitable actions rather than directly pitching their products.

50. Here, Defendants used Plaintiff's Work to attract the audience to their website and then to convert and retain that audience as profitable customers for their business. Once the audience visited the webpage and reviewed Defendants' article featuring Plaintiff's Work, Defendants solicited the the audience to, among other things, "buy," "sell," "rent," "advertise,"

make an account, and sign up for Defendants' email list. This is the first step in Defendants' marketing funnel to convert the audience into long-term profitable customers and Defendants used Plaintiff's Work to do so. Upon information and belief, Defendants were very successful in this endeavor.

## COUNT I
## COPYRIGHT INFRINGEMENT

51. Plaintiff incorporates by reference all prior paragraphs of this Complaint as if such were fully set forth herein.

52. Plaintiff owns a valid copyright in the Work at issue in this case.

53. Plaintiff registered the Work at issue in this case with the Register of Copyrights pursuant to 17 U.S.C. § 411(a).

54. Defendants copied, displayed, and distributed the Work at issue in this case and made derivatives of the Work without Plaintiff's authorization in violation of 17 U.S.C. § 501.

55. Defendants performed the acts alleged in the course and scope of their business activities and, upon information and belief, profited from their unlawful use of the Work.

56. Specifically, the Work has attracted potential customers to Defendants' website, and Defendants have turned some of those persons into paying customers of Defendants' business.

57. Defendants never paid Plaintiff for the Work, and never sought permission to use the Work.

58. Plaintiff has been damaged in an amount to be determined at trial. At minimum, the license value of Plaintiff's Work has dropped to nearly zero, as Defendants have made the

Work available for free to the world via their infringement. As a result, Plaintiff has suffered a substantial loss of income and goodwill for her business.

59. In the alternative, Plaintiff will seek statutory damages under the Copyright Act.

60. Defendants' infringement has been willful. Specifically, Defendants were in contact with Plaintiff prior to their illicit use of the Work and knew or should have known that the Work was created by and belonged to Plaintiff, and knew or should have known that they had no right to use the Work past the expiration of the Agreement.

## COUNT II
## REMOVAL OR ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION

61. Plaintiff incorporates by reference all prior paragraphs of this Complaint as if such were fully set forth herein.

62. Plaintiff's Work contained copyright management information as defined in 17 U.S.C. § 1202(c), including but not limited to the titles Plaintiff had assigned to each photograph that comprises the Work.

63. In violation of 17 U.S.C. § 1202(b), Defendants, without Plaintiff's authority, intentionally removed or altered copyright management information for Plaintiff's Work, including but not limited to Plaintiff's title for the Work, knowing or having reasonable grounds to know that doing so would induce, enable, facilitate or conceal an infringement of right under Title 12 of the United States Code.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brynn Burns prays for judgment against Defendants such that:

a. Defendants and their agents, servants, employees, affiliated entities, and all of those in active concert with him, be preliminarily and permanently enjoined from committing the acts alleged herein in violation of 17 U.S.C. § 501;

b. Defendants be required to pay Plaintiff her actual damages and Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages as provided in 17 U.S.C. § 504;

c. Plaintiff be awarded her attorneys' fees and costs of suit under the applicable statutes sued upon; and

d. Under 17 U.S.C. § 1203(b)(3) Defendants be required to pay Plaintiff her actual damages and additional profits of Defendants in accordance with 17 U.S.C. § 1203(c)(2) or, if Plaintiff so elects before judgment is entered, statutory damages in accordance with 17 U.S.C. § 1203(c)(3);

e. Under 17 U.S.C. § 1203(b)(4), Plaintiff be awarded costs;

f. Under 17 U.S.C. § 1203(b)(5), Plaintiff be awarded reasonable attorneys' fees and costs;

g. Defendants be permanently enjoined from displaying the Work; and

h. Plaintiff be awarded such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

**VOYTAS LAW, LLC**

By: /s/ Richard A. Voytas, Jr.
Richard A. Voytas, Jr. #6279483
7321 S. Lindbergh Blvd., Ste. 400
Saint Louis, MO 63125
Phone: (314) 380-3166
Email: rick@voytaslaw.com

*Attorney for Plaintiff*